ASHLEY D. POSNER (California Bar No.: 106195)
Email: ashleyposner@gmail.com
**POSNER LAW CORPORATION**
15303 Ventura Boulevard, Suite 900
Sherman Oaks, California 91403
Telephone No. (310) 475-8520
Facsimile No. (818) 986-2203

**HILLYER LEGAL, PLLC**
Gregory L. Hillyer (*Pro Hac Vice*)
E-mail: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Telephone No. (202) 686-2884
Facsimile No. (202) 686-2877

*Attorneys for Plaintiff,*
TRINITY INFO MEDIA, LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINITY INFO MEDIA, LLC f/k/a TRINITY INTEL MEDIA, LLC, <br><br>Plaintiff, <br><br>v. <br><br>COVALENT, INC. <br><br>Defendant. | CASE NO.: 2:21-cv-01360-JWH <br><br>AMENDED COMPLAINT FOR <br><br>PATENT INFRINGEMENT <br><br>(35 U.S.C. § 271) |

Plaintiff Trinity Info Media, LLC f/k/a Trinity Intel Media, LLC, for its Amended Complaint against Defendant Covalent, Inc., alleges as follows:

/ / /

/ / /

AMENDED COMPLAINT FOR PATENT INFRINGEMENT

## INTRODUCTION

1. This is a case for patent infringement.

## JURISDICTION AND VENUE

2. The cause of action in this Amended Complaint arises under the Patent Act, 35 U.S.C. § 101 *et seq*.

3. This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4. Venue is proper in this Court pursuant 28 U.S.C. § 1391 since Covalent is headquartered in this district and is an entity engaged in infringing activities which are causing harm within this district through the use, making, offering for sale or selling of infringing products and services to consumers in this district and throughout California.

## THE PARTIES

5. Plaintiff Trinity Info Media, LLC, formerly known as Trinity Intel Media, LLC (collectively, "Trinity"), is a limited liability company organized under the laws of Delaware, with its principal place of business at 756 Robinwood Drive, Pittsburgh, PA 15220.

6. Upon information and belief, Defendant Covalent, Inc. ("Covalent") is a Delaware Corporation, based in California, doing business in this state and having a corporate address of 1600 Vine Street #347, Los Angeles, CA 90028.

## GENERAL ALLEGATIONS

### Trinity and its Poll-Based Networking

7. Trinity is in the business of creating, launching and operating social online experiences with a focus on poll-based networking.

8. Trinity operates "pollpals" which allows users to engage in unique online polling on the interactive website, www.pollpals.com.

9. Through this website, users can respond to poll questions created by other users or create their own polls. The polls span a wide range of topics, including history,

sports, technology, politics and popular culture to name a few.

10. Depending on the unique answers to particular questions, users can learn the similarity of other user's responses, how many other users participated, the inspiration behind a certain poll and other metrics that enhance the overall experience.

11. Users of pollpals can also leave comments, start a discussion, make recommendations, generate likes and participate in other social networking activities.

### Trinity's Patent Rights

### The '321 Patent

12. On July 21, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,087,321 ("the '321 Patent"), entitled "Poll-Based Networking System."

13. A true and correct copy of the '321 Patent is attached as Exhibit 1.

14. Trinity is the sole owner of right and title to the '321 Patent.

15. The '321 Patent is presumed valid under 35 U.S.C. § 282.

16. The '321 Patent is directed, in part, to poll-based networking systems, methods and computer program products. These systems, methods and products may be employed to produce an on-line network of people (*i.e.*, friends) who are determined through polling each user and identifying other users based on matching the responses.

17. For example, after a user creates an initial profile, the system may poll the user with a first question. After the user provides an answer, the system may compare it to the answers of other users, identify users who answered similarly (*i.e.*, a match) and share the matched users. The user may progressively answer additional questions, and the system may progressively update the matches and present the other users.

18. Claim 1 of the '321 Patent is directed to a poll-based networking system, comprising: a data processing system having one or more processors and a memory, the memory being specifically encoded with instructions such that when executed, the instructions cause the one or more processors to perform operations of: (a) receiving user information from a user to generate a unique user profile for the user; (b) providing

the user a first polling question, the first polling question having a finite set of answers and a unique identification; (c) receiving and storing a selected answer for the first polling question; (d) comparing the selected answer against the selected answers of other users, based on the unique identification, to generate a likelihood of match between the user and each of the other users; and (e) displaying to the user the user profiles of other users that have a likelihood of match within a predetermined threshold.

### The '685 Patent

19. On March 2, 2021, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,936,685 ("the '685 Patent"), entitled "Poll-Based Networking System."

20. A true and correct copy of the '685 Patent is attached as Exhibit 2.

21. Trinity is the sole owner of right and title to the '685 Patent.

22. The '685 Patent is presumed valid under 35 U.S.C. § 282.

23. The '685 Patent is directed, in part, to poll-based networking systems, methods and computer program products involving a hand-held device. These systems, methods and products may be employed to produce an on-line network of people who are determined through polling each user and identifying other users based on matching the responses and then displaying results which are reviewable by swiping.

24. Claim 2 of the '685 Patent is directed to a computer-implemented method for creating a poll-based network, the method comprising an act of causing one or more processors having an associated memory specifically encoded with computer executable instruction means to execute the instruction means to cause the one or more processors to collectively perform operations of: (a) receiving user information from a user to generate a unique user profile for the user; (b) providing the user one or more polling questions, the one or more polling questions having a finite set of answers and a unique identification; (c) receiving and storing a selected answer for the one or more polling questions; (d) comparing the selected answer against the selected answers of other users, based on the unique identification, to generate a likelihood of match

between the user and each of the other users; (e) causing to be displayed to the user other users, that have a likelihood of match within a predetermined threshold; (f) wherein one or more of the operations are carried out on a hand-held device; and (g) wherein two or more results based on the likelihood of match are displayed in a list reviewable by swiping from one result to another.

### Advances And Benefits Of The Inventions In The '321 And '685 Patents

25. The inventions described and claimed in the '321 and '685 Patents represents significant advances over the prior art, improve the functionality of general-purpose computers and offer other advantages and benefits during matching operations.

26. Prior to the invention, a plethora of social networking websites shared common characteristics that merely allowed users to engage in activities over the internet using traditional computers, *i.e.*, desktop or laptop. Some of these internet-based computer networking websites allowed users to create profiles and find friends. To find friends, however, users were required to complete entire fields as part of their profiles which permitted a search of a user database where other profiles were stored.

27. While traditional websites may have queried the user for the purpose of classifying him/her in predefined categories with a similar group of people, such sites did not provide a progressive poll query that, in real-time, matched the user with other users based on each of the polls taken. A poll-based networking system employing logic that is operable for matching a user, in real-time, with other users based on all of the polls taken by the user and other users represents a significant advance over the art.

28. One or more processors may be configured to perform the operations of: collecting the selected answers with a web server and storing the selected answers in a database; upon receipt of a selected answer, separately transmitting the selected answer from the web server, through a match aggregator, to a plurality of match servers, each match server being assigned a distinct subset of the other users, such that each match server compares the selected answer of the user against the selected answers of the users in its distinct subset to generate a likelihood of match between the user and each

of the users in its distinct subset; receiving in the match aggregator, from each match server, a likelihood of match between the user and the users in the distinct subset; compiling the likelihood of matches from the plurality of match servers to generate the likelihood of match between the user and each of the other users; and transmitting the likelihood of match between the user and each of the other users.

29. The present invention also includes an advance over the prior art and an improvement over a general-purpose computer in the form of carrying out one or more operations described in the patents on a handheld device. The handheld device may be a personal device, such as a mobile phone.

30. The present invention also includes an advance over the prior art and an improvement over a general-purpose computer by enabling a user to review the matches with other users through the act of swiping. For example, two or more results may be displayed in a list reviewable by swiping from one result to another.

31. The present invention also includes an advance over the prior art and an improvement over a general-purpose computer in the form of a computer-program product that is operable on a mobile phone, such as an application ("app") which carries out one or more of the operations described in the patents.

32. In sum, before the invention, the prior art did not include, alone or in any combination: (1) a progressive poll that matches a user with other users in real time; (2) employing multiple match servers and a match aggregator; (3) carrying out one or more matching operations on a mobile phone; (4) displaying matches or potential matches reviewable by swiping; or (5) carrying out one or more match operations on a computer program product in the form of an application deployed on a mobile phone.

### The '113 Application

33. The patent application that led to the '321 Patent also led to other patents and applications, including U.S. Patent No. 9,230,032 and U.S. Serial No. 17/180,113 ("the '113 Application").

34. The '113 Application contains claims reciting systems and methods for

causing one or more processors to perform the operations of: (a) receiving user information from a user to generate a unique user profile for the user; (b) providing the user one or more polling questions, the one or more polling questions having a finite set of answers, each answer having a unique identifier; (c) receiving and storing one or more answers in response to the one or more polling questions; (d) comparing the user's one or more answers against one or more answers of other users to the same one or more polling questions; (e) selecting one or more other users who are potential matches with the user; (f) displaying to the user the selected one or more other users who are potential matches with the user; (g) wherein one or more of the operations are carried out on a hand-held device; and (h) wherein the selected other users are reviewable by the user by swiping.

**Covalent's Infringing Product**

**The '321 Patent**

35. Covalent offers a dating and social networking service.

36. Covalent promotes quality, curative matches based on various criteria, including age, location, appearance, lifestyle and income level.

37. Covalent makes, uses, offers to sell and/or sells the application known as Kippo ("The Kippo App").

38. The Kippo App was designed to connect profile users and offer introductory information for matches.

39. The Kippo App is promoted through the site www.kippoapp.com as well as various social media platforms, including Facebook, Twitter and Instagram.

40. The Kippo App can be downloaded through Google's GooglePlay or Apple's AppStore which are accessible directly, or via Kippo's website and elsewhere.

41. The Kippo App contains the elements of at least claim 1 of the '321 Patent.

42. By virtue of the deployment of the Kippo App to a personal device, a data processing system having one or more processors and a memory are employed by the application to perform relevant functions.

43. On information and belief, the memory is encoded with instructions such that when executed, the instructions cause the processor(s) to perform the operation of (a) receiving user information from a user to generate a unique user profile for the user.

44. Specifically, the Kippo App requires registration prior to use and therefore the user must provide specific information to generate a unique profile. This may be accomplished by providing preliminary information and log-in credentials.

45. Accordingly, during registration the Kippo App receives user information such as name, date of birth, phone or email, etc., which causes the generation of a unique profile.

46. Claim 1 recites that a processor performs the operation of (b) providing the user with a first polling question having a finite set of answers and a unique identification. In this regard, the Kippo App prompts the user to participate in polling questions. The first question asks about the gender with which the user identifies.



47. In the event the user identifies as a man, the box with the word "male" is intended to be selected by the user.

48. On the following screen, the user is asked the gender of the person with whom the user would like to connect.

1
2
3
4
5
6
7
8
9
10



11    49.    In the event the user is looking to connect with a woman, the box with the word "female" is intended to be selected by the user (rendering it a "unique identification"). The answer corresponding to the first polling question (a man looking to connect with a woman) is subsequently (c) received and stored by the processor.

50.    The user is then asked to share a location to discovery matches nearby.



51.    The answers are then used to identify suitable matches by (d) comparing them against the selected answers of other users (based on the unique identification) to generate a likelihood of match between the user and other users.

52. This is confirmed when (e) the user profiles of one or more other users that have a likelihood of match within a predetermined threshold are displayed to the user.



53. The display of other matched users and associated profiles confirms that the answer to at least the first polling question (*i.e.*, man looking to connect with a woman) was received, stored and compared to generate a match as evidenced by a picture of a female displayed on the profile of the match.

54. On information and belief, Covalent infringes additional claims of the '321 Patent, including one or more of claims 2, 3, 8 and 10.

### The '685 Patent

55. The Kippo App contains the elements of at least claim 2 of the '685 Patent.

56. On information and belief, by virtue of the deployment of the Kippo App to a personal device, one or more processors having an associated memory specifically encoded with computer executable instruction means to execute the instruction means cause the one or more processors to collectively perform operations of: (a) receiving user information from a user to generate a unique user profile for the user.

57. Specifically, the Kippo App requires registration prior to use and therefore the user must provide specific information to generate a unique profile. This may be

accomplished by providing preliminary information and log-in credentials.

58. Accordingly, during registration the Kippo App receives user information such as name, date of birth, phone or email, etc., which causes the generation of a unique profile.

59. Claim 2 recites that (b) the user is provided with one or more polling questions, the one or more polling questions having a finite set of answers and a unique identification. In this regard, the Kippo App prompts the user to participate in polling questions. The first question asks about the gender with which the user identifies.

60. In the event the user identifies as a man, the box with the word "male" is intended to be selected by the user.

61. On the following screen, the user is asked the gender of the person with whom the user would like to connect.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

11
AMENDED COMPLAINT FOR PATENT INFRINGEMENT



62. In the event the user is looking to connect with a woman, the box with the word "female" is intended to be selected by the user (rendering it a "unique identification"). Subsequently, (c) the selected answers corresponding to the polling questions (a man looking to connect with a woman) is received and stored.

63. The user is then asked to share a location to discovery matches nearby.



64. The answers are then used to identify suitable matches by (d) comparing the selected answer against the selected answers of other users, based on the unique identification, to generate a likelihood of match between the user and each of the other

users.

65. The Kippo App then (e) causes to be displayed to the user, other users, that have a likelihood of match within a predetermined threshold.



66. The display of other matched users and associated profiles confirms that the answer to at least the first polling question (*i.e.*, man looking to connect with a woman) was received, stored and compared to generate a match as evidenced by a picture of a female displayed on the profile of the match.

67. One or more of the operations of Kippo App may be (f) carried out on a hand-held device (*e.g.*, a mobile phone), wherein (g) two or more of the results based on the likelihood of match are displayed in a list that is reviewable by swiping from one result to another (*e.g.*, running a thumb or finger across the screen of the phone).

68. The Kippo App is a computer program product (*e.g.*, an application or "app" for a mobile phone) as recited in claim 3 of the '685 Patent.

69. On information and belief, Covalent infringes additional claims of the '685 Patent, including one or more of claims 12, 13, 14, 16, 17, 20, 21, 22, 24 and 25.

/ / /

/ / /

/ / /

# COUNT I

## Patent Infringement Of The '321 Patent Under 35 U.S.C. § 271

70. Trinity repeats and realleges the allegations in paragraphs 1 to 69 above as if fully set forth herein.

71. Covalent has directly infringed, is directly infringing and will continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '321 Patent under 35 U.S.C § 271(a) by making, using, selling, and/or offering for sale the Kippo App.

72. Covalent has infringed, is infringing, and will continue to infringe, literally and under the doctrine of equivalents, by inducing the infringement of others, of one or more claims of the '321 Patent under 35 U.S.C § 271(b) by making, using, selling, and/or offering for sale the Kippo App.

73. Covalent has infringed, is infringing, and will continue to infringe, literally or under the doctrine of equivalents, by contributing to the infringement of others, of one or more claims of the '321 Patent under 35 U.S.C § 271(c) by making, using, selling, and/or offering for sale the Kippo App.

74. Covalent's acts of patent infringement are willful.

75. Trinity has no adequate remedy at law.

76. Covalent's patent infringement is causing irreparable injury to Trinity and, unless enjoined, will continue to cause irreparable injury.

77. As a result of Covalent's intentional and willful infringement, Trinity is entitled to an injunction and damages in a sum to be determined.

# COUNT II

## Patent Infringement Of The '685 Patent Under 35 U.S.C. § 271

78. Trinity repeats and realleges the allegations in paragraphs 1 to 69 above as if fully set forth herein.

79. Covalent has directly infringed, is directly infringing and will continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of

the '685 Patent under 35 U.S.C § 271(a) by making, using, selling, and/or offering for sale the Kippo App.

80. Covalent has infringed, is infringing, and will continue to infringe, literally and under the doctrine of equivalents, by inducing the infringement of others, of one or more claims of the '685 Patent under 35 U.S.C § 271(b) by making, using, selling, and/or offering for sale the Kippo App.

81. Covalent has infringed, is infringing, and will continue to infringe, literally or under the doctrine of equivalents, by contributing to the infringement of others, of one or more claims of the '685 Patent under 35 U.S.C § 271(c) by making, using, selling, and/or offering for sale the Kippo App.

82. Covalent's acts of patent infringement are willful.

83. Trinity has no adequate remedy at law.

84. Covalent's patent infringement is causing irreparable injury to Trinity and, unless enjoined, will continue to cause irreparable injury.

85. As a result of Covalent's intentional and willful infringement, Trinity is entitled to an injunction and damages in a sum to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Trinity demands judgment in its favor on its Complaint and request the following relief:

1. Enter a judgment that Covalent has infringed and/or is infringing one or more claims of the '321 and '685 Patents under 35 U.S.C. § 271;

2. Permanently enjoin Covalent, their respective officers, agents, servants, directors, and employees, and all individuals in active concert or participation with each, from directly or indirectly infringing the '321 and '685 Patents; or inducing or contributing to the infringement by others of the '321 and '685 Patents;

3. Award Trinity damages adequate to compensate for Covalent's infringing acts, at a minimum at reasonable royalty, in accordance with 35 U.S.C. § 284;

4. Increase Trinity's damages award up to three times, in view of Covalent's

willful infringement, in accordance with 35 U.S.C. § 284;

     5.     Award Trinity interest and costs pursuant to 35 U.S.C. § 284;

     6.     Declare this case exceptional under 35 U.S.C. § 285 and award Trinity its attorneys' fees, expenses and costs incurred in this action; and

     7.     Award such other relief as this Court deems just and proper.

## JURY DEMAND

Trinity hereby demands a trial by jury on all issues so triable as a matter of right.

Dated: April 28, 2021                        Respectfully submitted,

                                        By:  *s/ Ashley D. Posner*
                                              Ashley D. Posner (CA Bar # 106195)
                                              *ashleyposner@gmail.com*
                                             POSNER LAW CORPORATION
                                             15303 Ventura Boulevard, Suite 900
                                             Sherman Oaks, California 91403
                                             Telephone No. (310) 475-8520
                                             Facsimile No. (818) 986-2203