Stephen McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Defendant
Covalent, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINITY INFO MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COVALENT, INC.,<br><br>Defendant. | Case No. 2:21-CV-01360-JWH-MRW<br><br>**DEFENDANT COVALENT, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Judge: Hon. John W. Holcomb<br>**Hearing Date**: June 11, 2021<br>**Time**: 9:00 a.m.<br>**Courtroom**: 2 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   PATENTS AND PROCEDURAL BACKGROUND ..................................... 2

    A.    The '321 Patent ................................................................................... 2

    B.    The '685 Patent ................................................................................... 5

    C.    Procedural Summary of This Action.................................................... 8

III.  MOTION TO DISMISS STANDARD .......................................................... 9

    A.    Invalidating Patents Under § 101 Is Proper on Motion to Dismiss......... 9

    B.    Conclusory Allegations by Patentee Can and Should Be Rejected ..... 11

    C.    Claim Construction is Not a Prerequisite to § 101 Determination....... 12

IV.   ARGUMENT ................................................................................................ 13

    A.    *Alice*'s Two-Step Test......................................................................... 13

    B.    *Alice* Step 1: Claims are Directed to the Idea of Matching People Who Gave Corresponding Answers to a Question ...................................... 14

    C.    *Alice* Step 2: Claims Reciting Generic Computer Components Do Not Contain an Inventive Concept............................................................ 19

    D.    Other Asserted Claims Need Not Be Analyzed Separately But Are Invalid for the Same Reasons ........................................................................ 23

Conclusion.......................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.* , 882 F.3d 1121 (Fed. Cir. 2018).. 10, 18, 20, 21, 22

*Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004)......................................................................... 11

*Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014)........................................... 2, 13, 14, 19, 23, 25

*Apollo Fin., LLC v. Cisco Sys., Inc.*, 190 F. Supp. 3d 939 (C.D. Cal. 2016)............................. 9, 13

*Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*, 955 F.3d 971 (Fed. Cir. 2020).............. 13, 19

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281(Fed. Cir. 2018)............................................. 18

*Cardpool, Inc. v. Plastic Jungle, Inc.*, No. C 12-04182 WHA, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013) ....................................................................................................................................... 12

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) .............. 10, 14, 15, 18, 20

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) ...................................................................................................................................... 9, 12

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014)........... 21

*Elec. Commc'n Techs. v. ShoppersChoice.com, LLC*, 958 F.3d 1178 (Fed. Cir. 2020).......... 10, 13

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)........................................... 14, 18

*FairWarning IP, LLC v. Iatric Sys., Inc.,* 839 F.3d 1089 (Fed. Cir. 2016)............................ 18, 19

*I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982 (Fed. Cir. 2014)................................................ 11

*Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315 (Fed. Cir. 2017) ....................... 12

*Jedi Techs., Inc. v. Spark Networks, Inc.*, Civil Action No. 1:16-1055-GMS (D. Del. Aug. 3, 2017) ...................................................................................................................... 1, 17, 18, 21

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) ........................... 11, 22, 23

*PLC v. Iac/Interactivecorp, Match Grp., Inc.*, No. 18-366-WCB (D. Del. Feb. 4, 2019)............. 20

*Purepredictive, Inc. v. H2O.AI, Inc.*, No. 17-cv-03049-WHO, 2017 WL 3721480 (N.D. Cal. Aug. 29, 2017) ..................................................................................................................................... 2

*RecogniCorp LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017) ..................................... 12, 19

*Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*, 399 F. Supp. 3d 1018 (C.D. Cal. 2019) ...................................................................................................................................... 12

*Ringcentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988 (N.D. Cal. 2019) .................................. 23

*SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018). ................................... 10, 21, 22

*Secure Mail Solutions LLC v. Universal Wilde, Inc.*, 169 F. Supp. 3d 1039 (C.D. Cal. 2016)....... 9

*Simio, LLC v. Flexsim Software Prods., Inc.*, 2020-1171 (Fed. Cir. Dec. 29, 2020)... 10, 11, 13, 21

*Software Rights Archive, LLC v. Facebook, Inc.*, No. 12-cv-03970-HSG (N.D. Cal. Sep. 9, 2020) .......................................................................................................................................... 15, 18

*Synopsys, Inc. v. Avatar Integrated Sys.*, No. 20-cv-04151-WHO (N.D. Cal. Dec. 22, 2020). 2, 24, 25

*Teradata US, Inc. v. SAP SE*, No. 20-cv-06127-WHO (N.D. Cal. Feb. 1, 2021)..................... 9, 13

*Ubisoft Ent., S.A. v. Yousician Oy*, 2019-2399 (Fed. Cir. June 11, 2020) ........................ 10, 11, 21

*Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376 (Fed. Cir. 2018)1, 12, 15, 17, 18, 24, 25

*Whitserve LLC v. Donuts Inc*., 2019-2240 (Fed. Cir. Apr. 10, 2020)..................................... 10, 20

*Windy City Innovations, LLC v. Facebook, Inc*., 411 F. Supp. 3d 886 (N.D. Cal. 2019)............. 20

*Wolf v. Capstone Photography, Inc., No*. 2:13-CV-09573, 2014, WL 7639820 (C.D. Cal. Oct. 28, 2014) ................................................................................................................................... 13

*Yanbin Yu v. Apple Inc*., No. 3:18-cv-06181-JD (N.D. Cal. Mar. 24, 2020) .................... 11, 15, 21

*Zkey Invs., LLC v. Facebook Inc*., 225 F. Supp. 3d 1147 (C.D. Cal. 2016).................................. 12

## I.      __INTRODUCTION__

Plaintiff Trinity Info Media, LLC's ("Trinity") patents-in-suit both claim a mental process humans have been performing for eons—matching people who gave corresponding answers to questions. Trinity has alleged Defendant Covalent, Inc. ("Covalent") is infringing the patents-in-suit by offering a dating app, Kippo. Trinity has not alleged the Kippo app infringes by running any specific improved computer technology. Rather, Trinity alleges that Kippo is infringing because the app asks the user if they want to see dating profiles of a particular gender, receives the user's answer, and then displays profiles of the gender(s) matching the user's selection. That is the entire process alleged to infringe *both* patents. But Trinity cannot own this mental process, to which its patents append generic computers.

The claims of Trinity's patents, U.S. Patent Nos. 9,087,321 (the "'321 Patent") and 10,936,685 (the "'685 Patent) (together the "Patents"), are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of matching respondents who gave corresponding answers to a question. Another court has invalidated similar matchmaking patents on motions to dismiss. *See Jedi Techs., Inc. v. Spark Networks, Inc.*, Civil Action No. 1:16-1055-GMS, at *13 (D. Del. Aug. 3, 2017) (finding computerized matchmaking patent invalid under § 101 and granting motion to dismiss where "[t]he patent's foundation rests upon the notion of human compatibility and matchmaking, where an individual learns about the personalities and interests of two different individuals and, based upon a certain criteria, determines whether the individuals are compatible."). And many recent Federal Circuit opinions have affirmed grants of motions to dismiss on § 101 grounds without requiring claim construction or discovery. A mental process is ineligible for patenting, rendering the claims invalid under § 101 as a matter of law. *See Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385-86 (Fed. Cir. 2018) (affirming dismissal of complaint asserting infringement of claims directed to "human cognitive actions"); *Purepredictive, Inc. v. H2O.AI, Inc.*, No.

17-cv-03049-WHO, 2017 WL 3721480, at *5 (N.D. Cal. Aug. 29, 2017) (dismissing complaint asserting infringement of claims "directed to a mental process and the abstract concept of using mathematical algorithms to perform predictive analytics"), *aff'd*, 741 F. App'x 802 (Fed. Cir. 2018). Indeed, "[t]he Federal Circuit has repeatedly held that similar claims involving organizing, collecting, analyzing, and processing data are directed to abstract concepts." *Synopsys, Inc. v. Avatar Integrated Sys*., No. 20-cv-04151-WHO, at *4 (N.D. Cal. Dec. 22, 2020) (listing cases).

The claims of the Patents implement the abstract idea of matching users by their answers to a question through the use of known, generic computer hardware and software. As the Supreme Court explained in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), "merely requiring generic computer implementation fails to transform [an] abstract idea into a patent-eligible invention." The Patents are precisely the type of patent that is invalid under *Alice*. Given the straightforward nature of the Patents' claims and the clear applicability of *Alice*, resolving this threshold issue through a motion to dismiss—before unnecessary time and expense is spent on further proceedings—is appropriate, as numerous courts have recognized. Trinity's First Amended Complaint should therefore be dismissed with prejudice, as the defects cannot be remedied by amendment.

## II.    PATENTS AND PROCEDURAL BACKGROUND

### A.    The '321 Patent

***Patent specification.*** The '321 Patent, entitled "Poll-Based Networking System," was filed on November 22, 2010, and issued on July 21, 2015. [Doc. 28, Exhibit ("Ex.") 1] The Abstract describes the '321 Patent as concerning "a poll-based networking system" which "provides an on-line network of friends that are determined through polling each of the users." [*Id*. at Abstract] The '321 Patent specification states that it was known in the prior art for websites to "maintain a database with user profiles" and "[w]hen a new user registers on an existing site,

the site may attempt to match the user profile with existing user profiles as stored on a database." [*Id*. at 1:38-40] It was also known in the prior art that such matching could be accomplished by asking questions to the new user and matching the user with other users based on the answer. [*Id*. at 1:30-34 ("Alternatively, such sites may ask what high school a user went to and provides suggested friends who also attended the same high school. In providing such a question, the site is querying or polling the user to match the user with other similar users.") The '321 Patent contrasts its claimed invention with the prior art as follows: "While the sites may query the user to classify the user with a similar group of people, such sites do not provide a progressive poll query that, in real-time, matches the user with other users based upon all of the polls taken." [*Id*. at 1:35-38] The '321 Patent's purported invention was "directed to a poll-based networking system that connects users based on similarities as determined through poll answering and provides real-time results to the users." [*Id*. at 1:53-55 (Summary of Invention)]

The patent broadly defines a "polling question" as "a question that has multiple answers." [*Id*. at 4:64-5:2] The patent claims describe a series of basic steps for matching users by answers they give over a networking system. [*Id*. at 1:11-14] As recited in Claim 1, these steps include: (i) receiving information from a user to create a user profile; (ii) providing the user with a polling question; (iii) receiving the user's answer; (iv) comparing the user's answer to answers given by other users and generating the likelihood of a match; and (v) displaying to the user the profiles of other users which have a likelihood of a match. [*Id*. at 12:15-34]

The patent's specification is clear that its claimed system can run on generic, general-purpose computer hardware and software, which the patent acknowledges were known in the prior art. For example, the patent explains the alleged invention can be performed using any type of computer: "The computer system 840 may be a conventional computer system that can be used as a member computer system or a server computer system or as a web server computer system." [*Id*. at 9:56-59] The

patent states about the claimed system:

> The algorithms and displays presented herein are not inherently related to any particular computer or other apparatus. Various general purpose systems may be used with programs in accordance with the teachings herein, or it may prove convenient to construct more specialized apparatus to perform the methods of some embodiments. . . . In addition, the present invention is not described with reference to any particular programming language, and various embodiments may thus be implemented using a variety of programming languages.

[*Id.* at 11:49-59] In other words, the claimed system of matching users by asking a polling question was intended to be operated on generic computer components, using no specific structure or programming language. [*Id.* at 11:21-59]

***Patent claims.*** The '321 Patent has three substantively similar independent claims—claim 1, reciting a system; claim 10, reciting a computer-implemented method; and claim 19, reciting a computer program product. Each is directed to the idea of *matching users who gave corresponding answers to a question*. Claim 1 recites:

> 1. A poll-based networking system comprising:
>
>> a data processing system having one or more processors and a memory, the memory being specifically encoded with instructions such that when executed, the instructions cause the one or more processors to perform the operations of:
>>
>>> receiving user information from a user to generate a unique user profile for the user;
>>>
>>> providing the user a first polling question, the first polling question having a finite set of answers and a unique identification;
>>>
>>> receiving and storing a selected answer for the first polling question;
>>>
>>> comparing the selected answer against the selected answers of other users, based on the unique identification, to generate a likelihood of match between the user and each of the other users; and
>>>
>>> displaying to the user the user profiles of other users that have a likelihood of match within a predetermined threshold.

[*Id.* at 12:15-34]

The dependent claims (2-9, 11-18, and 20-27) recite additional ways to match users by their answers to questions: asking multiple questions and finding a match based on like answers to those questions (claim 2); determining a match by the percentage of like answers given for a particular number of questions (claim 4); and displaying profiles of users who fall within a range of like answers given (claim 5). Other dependent claims recite the same processes carried out on multiple generic servers (claims 6, 7, and 8, for example). No claim requires any specific, non-generic hardware or software to perform these steps or any other part of the claimed questioning and matching process. Further, none of the claims of the '321 Patent require real-time comparison of data or require that match results be displayed in real-time or at any particular speed at all. [*See id.* at 12:15-18:33 (no mention of real-time in any claims)]

The '321 Patent contains just one reference in the specification that the claimed system can be performed on a hand-held device, among many other generic computing devices. [*Id*. at 8:33-43] Neither the patent specification nor the claims describe swiping the screen on a mobile device to carry out any function on the device.

### B.   The '685 Patent

***Patent specification.*** The '685 Patent is a continuation-in-part from the application that led to the '321 Patent. [Doc. 28, Ex. 2 at 1:6-15] The application which led to the '685 Patent was filed July 2, 2018. [*Id*. at p.1] The basic invention is described as "a poll-based networking and ecommerce system that connects users to other users, or products, goods and/or services based on similarities as determined through poll answering and provides real-time results to the users." [*Id*. at 2:3-7 (Summary of Invention)] The '685 Patent specification acknowledges that it was known in the prior art for websites to ask a user questions and use the answers to match the user with other users. [*Id*. at 1:41-45 (describing prior art websites and apps and stating, "[i]n providing such options, the site is querying or

1  polling the user to match the user with similar user profiles, products, goods or

2  services."). The claimed invention allegedly differs from the prior art as follows:

3        As an improvement over the prior art, the present invention polls a
       user with a variety of questions. After providing an answer to each
4        question, the system compares, in real-time, the current user's
       response with all other users or to the descriptions of product, goods
5        and/or services, based on the unique identification, to identify those
       products, goods and/or services that most similarly match the answers
6        to that of the current user. As the current user progressively answers
       additional questions, the system progressively updates the matching
7        and presentation of similar products, goods and/or services.

8  [*Id*. at 6:3-13] In other words, the claimed invention is the process of matching

9  users based on asking multiple questions and weeding out respondents who did not

10  give corresponding answers to the series of questions.

11        The specification of the '685 Patent, like the '321 Patent, makes clear that the

12  claimed poll-based network invention can be run on generic, general-purpose

13  computing hardware and software without any specific processing or programming

14  requirements. [*See, e.g.*, *id*. at 5:41-63, 13:32-55] The system categorizes answers

15  and determines matches using previously known techniques. [*Id*. at 7:41-46, 8:4-7]

16  The system can operate on single or multiple servers. [*Id*. at 9:37-38] The input is

17  provided by a general-purpose computer processor. [*Id*. at 9:67-10:4] Any

18  description of the system in the specification is expressly non-limiting, and "[o]ther

19  embodiments can be practiced with other computer system configurations,

20  including hand-held devices, multiprocessor systems, microprocessor-based or

21  programmable consumer electronics, network PCs, minicomputers, mainframe

22  computers, and the like." [*Id*. at 10:16-33] The specification states in describing the

23  Internet-connected version of the claimed invention that it can be operated on "a

24  conventional computer system that can be used as a member computer system or a

25  server computer system or as a web server computer system." [*Id*. at 11:20-52]

26  And, to make clear no limitations on the type of hardware or software used could be

27  implied, the '685 Patent states any system described in the specification "is one

28  example of many possible computer systems which have different architectures."

1   [*Id*. at 12:33-34]

2       While the '685 Patent describes certain examples of how a matching system

3   can be programmed, it goes on to state:

4       The algorithms and displays presented herein are not inherently related
        to any particular computer or other apparatus. Various general purpose
5       systems may be used with programs in accordance with the teachings
        herein, or it may prove convenient to construct more specialized
6       apparatus to perform the methods of some embodiments. . . . In
        addition, the present invention is not described with reference to any
7       particular programming language, and various embodiments may thus
        be implemented using a variety of programming languages.

8

9   [*Id*. at 13:44-55]

10      ***Patent claims.*** The '685 Patent has three substantively similar independent

11  claims—claim 1, reciting a system; claim 2, reciting a computer-implemented

12  method; and claim 3, reciting a computer program product. Each is directed to the

13  key idea of *matching users who gave corresponding answers to a question*. Claim 2

14  recites:

15      2. A computer-implemented method for creating a poll-based network,
        the method comprising an act of causing one or more processors
16      having an associated memory specifically encoded with computer
        executable instruction means to execute the instruction means to cause
17      the one or more processors to collectively perform operations of:

18      receiving user information from a user to generate a unique user
        profile for the user;
19
        providing the user one or more polling questions, the one or more
20      polling questions having a finite set of answers and a unique
        identification;
21
        receiving and storing a selected answer for the one or more polling
22      questions;

23      comparing the selected answer against the selected answers of other
        users, based on the unique identification, to generate a likelihood of
24      match between the user and each of the other users;

25      causing to be displayed to the user other users, that have a
        likelihood of match within a predetermined threshold;
26
        wherein one or more of the operations are carried out on a hand-
27      held device; and wherein two or more results based on the
        likelihood of match are displayed in a list reviewable by swiping
28      from one result to another.

[*Id*. at 14:37-59]

Most of the dependent claims (4-27) recite additional ways to match users by their answers to questions: matching by gender (claims 4-6, 12-14, and 20-22); asking more than 10 polling questions to a user (claims 7, 15, and 23); asking fewer than 10 polling questions to a user (claims 8, 16, and 24); and displaying one or more of the polling question answers to another user (claims 9, 10, 17, 18, 25, and 26). Dependent claims 11, 19, and 27 recite the claimed system, method, and process operated on one or more generic remote processors linked through a communications network. No claim requires any specific, non-generic hardware or software to perform these steps or any other part of the claimed questioning and matching process. Neither do any of the claims in the '685 Patent require that the matching comparison be performed at any particular speed, whether in "real-time" or otherwise.

While the independent claims of the '685 Patent contain a limitation regarding swiping the screen on a device to review match results, there are no references in the specification to swiping or any description of how that function should be programmed or implemented. Nor does the Patent purport to have invented that process or claim that swiping a screen would have been novel as of July 2, 2018, when the patent application was filed.

## C.   Procedural Summary of This Action

Trinity sued Covalent for infringement of the '321 Patent on February 15, 2021. [Doc. 1] Covalent moved to dismiss on grounds the '321 Patent is invalid under *Alice* and § 101. [Doc. 24] Trinity mooted that motion by filing the First Amended Complaint ("FAC") on April 28, 2021, alleging infringement of the '321 Patent and the '685 Patent. [Doc. 28] Specifically, Trinity alleges Covalent is infringing Claims 1-3, 8, and 10 of the '321 Patent and Claims 2, 3, 12-14, 16, 17, 20-22, 24, and 25 of the '685 Patent (collectively, the "Asserted Claims"). [*Id*. ¶¶ 41, 54, 55, 69]

According to the FAC, Covalent's Kippo app infringes Claim 1 of the '321 Patent by allegedly performing the following steps: (1) asking the user their gender; (2) asking the user if they would like to see dating profiles of a particular gender; and (3) based on the user's answer, displaying to the user the dating profiles of other users matching the selected gender(s). [*Id*. ¶¶ 46-53] Trinity alleges that the same process infringes Claim 2 of the '685 Patent, with the addition that part of the process allegedly is carried out on a mobile device and that matches are allegedly reviewable by swiping. [*Id*. ¶¶ 59-67]

### III.     <u>MOTION TO DISMISS STANDARD</u>

#### A.     <u>Invalidating Patents Under § 101 Is Proper on Motion to Dismiss</u>

"Patent-eligibility is a question of law." *Apollo Fin., LLC v. Cisco Sys., Inc*., 190 F. Supp. 3d 939, 942 (C.D. Cal. 2016). "Courts may address whether a patent is eligible under the Patent Act, pursuant to § 101, through a motion to dismiss." *Id*. (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A*., 776 F.3d 1343 (Fed. Cir. 2014) (affirming district court's grant of a motion to dismiss based on a § 101 analysis)); *Secure Mail Solutions LLC v. Universal Wilde, Inc*., 169 F. Supp. 3d 1039, 1058 (C.D. Cal. 2016) (granting motion to dismiss patent suit for invalidity under § 101). Indeed, "[t]he Federal Circuit has 'repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.'" *Teradata US, Inc. v. SAP SE*, No. 20-cv-06127-WHO, at *4 (N.D. Cal. Feb. 1, 2021) (quoting *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016)).

Trinity will try to convince this Court that the Federal Circuit no longer approves of finding patents invalid under § 101 on motions to dismiss. That is far from true. " Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law. " *SAP Am., Inc. v.*

1   *Investpic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). "[P]atent eligibility can be

2   determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that,

3   taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*

4   *Software, Inc. v. Green Shades Software, Inc*. , 882 F.3d 1121, 1125 (Fed. Cir.

5   2018). *Aatrix* does not bar finding invalidity at the motion to dismiss stage, a fact

6   clearly demonstrated by the numerous Federal Circuit opinions post-*Aatrix* that

7   have affirmed district court decisions granting motions to dismiss and for judgment

8   on the pleadings (reviewed under the same standard) for invalidity under § 101.

9   *See, e.g.*, *Elec. Commc'n Techs. v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184

10   (Fed. Cir. 2020); *Simio, LLC v. Flexsim Software Prods., Inc*., 2020-1171, at *23

11   (Fed. Cir. Dec. 29, 2020); *Ubisoft Ent., S.A. v. Yousician Oy*, 2019-2399 (Fed. Cir.

12   June 11, 2020); *Whitserve LLC v. Donuts Inc*., 2019-2240, at *11 (Fed. Cir. Apr.

13   10, 2020); *ChargePoint, Inc. v. SemaConnect, Inc*., 920 F.3d 759, 775 (Fed. Cir.

14   2019); *SAP Am*, 898 F.3d at 1170.

15       As recently as April 2020, the Federal Circuit rejected a patentee's argument

16   that the § 101 invalidity finding should not have been made at the motion to dismiss

17   stage and noted (again) "we have repeatedly made clear that patent eligibility can

18   be determined at the Rule 12(b)(6) stage if there are no plausible factual allegations

19   to impede such a resolution." *Whitserve*, 2019-2240, at *10. "Factual questions

20   relevant to the § 101 analysis, like other legal questions based on underlying facts,

21   do not prevent a judgment on the pleadings when the pleadings and exhibits

22   attached thereto show that there are no plausible factual disputes." *Id*. (internal

23   punctuation omitted). "In the § 101 context, the specification alone may suffice to

24   resolve the patent-eligibility inquiry." *Id*.

25       Indeed, "there are clear advantages to addressing Section 101's requirements

26   at the outset of litigation." *I/P Engine, Inc. v. AOL Inc*., 576 F. App'x 982, 996

27   (Fed. Cir. 2014). "Patent eligibility issues can often be resolved without lengthy

28   claim construction, and an early determination that the subject matter of asserted

DEFENDANT'S MEMO IN SUPPORT OF
RULE 12(B)(6) MOTION TO DISMISS FAC
CASE NO. 2:21-CV-01360-JWH-MRW

claims is patent ineligible can spare both litigants and courts years of needless litigation." *Id*. In particular, "[a]ddressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business patents." *OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359, 1364 (Fed. Cir. 2015) (J. Mayer, concurring).

## B.   Conclusory Allegations by Patentee Can and Should Be Rejected

While courts must accept *well-pled* allegations as true, they need not take every allegation in a complaint at face value. "On a motion to dismiss, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Yanbin Yu v. Apple Inc*., No. 3:18-cv-06181-JD, at *4 (N.D. Cal. Mar. 24, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The same rule applies to conclusory factual allegations. The Federal Circuit recently noted, in affirming a grant of a motion to dismiss on § 101 invalidity grounds and denial of leave to amend, that it is proper to "disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)." *Simio*, 2020-1171, at *19; *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (holding that "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss"). In *Simio*, the  Federal Circuit rejected conclusory allegations from the patentee regarding the purported novelty of the claimed invention, holding that "[a] statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory." *Id*. Such conclusory allegations do not "prevent resolving the eligibility question as a matter of law.'" *Id*. at *20 (quoting *Aatrix*, 882 F.3d at 1125); *see also Ubisoft Ent., S.A. v. Yousician Oy*, 2019-2399, at *7 (Fed. Cir. June 11, 2020) (rejecting unsupported factual allegations by the patentee and affirming grant of motion to dismiss under § 101 while noting "[t]he district court was not required to accept [the patentee's]

1   unreasoned conclusions and arguments in the absence of specific plausible

2   allegations of supporting facts.").

3          Moreover, a court does not check its common sense or experience at the door

4   when deciding a motion to dismiss. "Determining whether a complaint states a

5   plausible claim for relief is a context-specific task that requires the reviewing court

6   to draw on its judicial experience and common sense." *Redbox Automated Retail,*

7   *LLC v. Buena Vista Home Ent., Inc*., 399 F. Supp. 3d 1018, 1026 (C.D. Cal. 2019).

8   In the patent context, that means courts can properly consider whether a patent

9   claim covers a basic, widely-known process. *See, e.g.*, *RecogniCorp LLC v.*

10  *Nintendo Co*., 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("Morse code, ordering food at

11  a fast food restaurant via a numbering system, and Paul Revere's 'one if by land,

12  two if by sea' signaling system all exemplify encoding at one end and decoding at

13  the other end."); *Voter Verified*, 887 F.3d at 1385-86 (noting about patent claims

14  drawn to voting concepts that "[h]umans have performed this fundamental activity

15  that forms the basis of our democracy for hundreds of years."); *Intellectual*

16  *Ventures I LLC v. Erie Indem. Co*., 850 F.3d 1315, 1330 (Fed. Cir. 2017)

17  ("Remotely accessing and retrieving user-specified information is an age-old

18  practice that existed well before the advent of computers and the Internet.").

19      **C.     Claim Construction is Not a Prerequisite to § 101 Determination**

20          "Claim construction is not necessary" for a § 101 analysis when the "basic

21  character of the claimed subject matter is readily ascertainable from the face of the

22  patent." *Cardpool, Inc. v. Plastic Jungle, Inc*., No. C 12-04182 WHA, 2013 WL

23  245026, at *4 (N.D. Cal. Jan. 22, 2013); *see also Content Extraction*, 776 F.3d at

24  1349; *Zkey Invs., LLC v. Facebook Inc*., 225 F. Supp. 3d 1147, 1152 (C.D. Cal.

25  2016) (no claim construction needed to invalidate under § 101 a patent claiming the

26  process of "allowing individuals to manage and selectively share with others items

27  of information about themselves" via a computer network); *Wolf v. Capstone*

28  *Photography, Inc., No.* 2:13-CV-09573, 2014, WL 7639820, at *6 (C.D. Cal. Oct.

28, 2014) (holding terms "associating identifying data" and "cataloging each of the photographs in a web-site server" did not require claim construction before resolving § 101 issue). As the Federal Circuit has very recently held, in such situations there is no error in a district court determining ineligibility without first conducting claim construction. *Simio*, LLC, 2020-1171, at *19-20; *Elec. Commc'n.*, 958 F.3d at 1184.

## IV.   ARGUMENT

Trinity's Asserted Claims are directed to an abstract idea under *Alice* and its progeny, with no saving inventive concept in application of the abstract idea. The Patents are therefore invalid and the FAC should be dismissed with prejudice. Claim construction is not necessary for the Court to address this validity issue.

### A.   *Alice*'s Two-Step Test

"Laws of nature, natural phenomena, and abstract ideas are not patentable." *Apollo*, 190 F. Supp. 3d at 942 (quoting *Mayo Collab. Serv. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012)). These are "the basic tools of scientific and technological work," and "monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Id*. "[P]atents that seek to wholly preempt others from using a law of nature or an abstract idea—'the basic tools of scientific and technological work'—are invalid." *Teradata*, No. 20-cv-06127-WHO, at *4.

The *Alice* Court laid out a two-step process for assessing patent eligibility:

1.   "At step one, [courts] determine whether the claims are directed to an abstract idea." *Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*, 955 F.3d 971, 978 (Fed. Cir. 2020).

2.   "At *Alice* step two, [courts] consider the elements of each claim individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id*. at 980 (internal quotation marks omitted).

The Federal Circuit has "described the first-stage inquiry as looking at the 'focus' of the claims, their 'character as a whole,' and the second-stage inquiry (where reached) as looking more precisely at what the claim elements add— specifically, whether, in the Supreme Court's terms, they identify an 'inventive concept' in the application of the ineligible matter to which (by assumption at stage two) the claim is directed." *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

**B.   *Alice* Step 1: Claims are Directed to the Idea of Matching People Who Gave Corresponding Answers to a Question**

*Alice*'s first step is to determine whether a patent claim is "directed to" patent-ineligible subject matter such as an abstract idea. *Alice*, 573 U.S. at 217. The key question here is "whether the focus *of the claims* is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016) (emphasis added). In conducting this analysis, "while the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). "This is because the concern that drives the judicial exceptions to patentability is one of preemption, and the claim language defines the breadth of each claim[.]" *Id.* (citing *Alice*, 573 U.S. at 216). "Ultimately, the § 101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint*, 920 F.3d at 769 (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (holding that "complex details from the specification cannot save a claim directed to an abstract idea that recites generic computer parts.")). "Even a specification full of technical details about a physical invention may nonetheless

conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea." *ChargePoint*, 920 F.3d at 769; *see also Yanbin Yu*, 3:18-cv-06181-JD, at *8 ("it is clear, from the claims themselves and the specification, that the limitations require no improved computer resources [the patentee] claims to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed process."); *Software Rights Archive, LLC v. Facebook, Inc.*, No. 12-cv-03970-HSG, at *8 (N.D. Cal. Sep. 9, 2020) (granting motion to dismiss on § 101 grounds where the "claims of the '852 patent do not recite a particular way of programing or designing software" and "instead provide general detail about collecting and analyzing the information on conventional computers.").

Steps that consist of "human cognitive actions" are "nothing more than abstract ideas." *Voter Verified*, 887 F.3d at 1385-86 (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("holding "methods which can be performed entirely in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none.")). Because analyzing and processing information is what the human mind does, those steps too are patent-ineligible abstract ideas:

> . . . [W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas. In a similar vein, we have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category. And we have recognized that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis.

*Elec. Power*, 830 F.3d at 1353-54 (citations omitted).

Here, all of the Asserted Claims in both Trinity Patents focus on the idea of *matching users who gave corresponding answers to a question*. For example, Claim

1 of the '321 Patent begins with receiving user information, such as a name. [Doc. 28, Ex. 1 at 12:21-22] The user is then asked a question with a finite number of answers, such as a "yes or no" question. [*Id*. at 12:23-25, 4:64-5:2 (defining "polling question")] The user's answer is received and compared in some nonspecific, unidentified way to the answers of other users to see if there might be a match. [*Id*. at 12:26-31] Matching profiles are then displayed to the user. [*Id*. at 12:32-34] The following is an example of steps that would infringe Claim 1:

1. A system asks a user to type in his name.
2. The system asks the user the question: "Would you rather be friends with someone who likes the Dodgers or the Yankees?"
3. When the user selects "Dodgers" as the answer, the system compares that answer to profiles of other users.
4. The system displays to the user the profiles of other users who chose "Dodgers" as an answer.

That is the complete claimed system.[1] Claim 2 of the '685 Patent recites a computer-implemented method covering the same steps of the same abstract process. [Doc. 28, Ex. 2 at 14:37-59] Neither claim requires any specific hardware or software to perform the claimed steps and neither recites any improvements to the operating technology. Neither claim requires "real-time" processing speed. And neither claim (and none of the Asserted Claims) even requires asking more than one question to the user or matching based on more than one answer. "Progressive polling," the entire purported invention, is not described in either claim.

What these claims recite is a mental process: matching people who gave corresponding answers to a question. That is a "human cognitive action" that has performed for thousands of years. *See Voter Verified*, 887 F.3d at 1385-86. Even

---

[1] Trinity may argue this Court cannot do this sort of common-sense analysis of the patent claims. But this Court does not check its judicial experience and common sense at the door on a motion to dismiss. *See Redbox*, 399 F. Supp. 3d at 1026; *RecogniCorp*, 855 F.3d at 1326 (noting claimed system covered long-known processes such as Morse code).

the process of winnowing a field by asking more than one question—though not actually required by the independent claims—is clearly a long-standing human practice. The Court can rely on its common sense and experience for the basic premise that, for eons, humans have asked questions to determine whether others have like interests and matched those who gave corresponding answers. "Do we like the same things" is a basic principle of matchmaking. *See, e.g.*, *Jedi Techs*, No. 1:16-1055-GMS, at *13 (noting on motion to dismiss that "[t]he concept of matchmaking is certainly not novel and has been performed by humans for a very long time."). The specifications of both Patents also note it was well-known for websites to query users and match them with other users based on their answers. [*See* Doc. 28, Ex. 1 at 1:30-34; Ex. 2 at 1:41-45]

The Patents' "focus" on an abstract idea, rather than any technological innovation, is made even clearer by looking at the dependent claims. The dependent claims in both Patents cover processes such as asking multiple polling questions, determining a match by a percentage of corresponding answers, matching by gender, and displaying an answer to another user. These are not technological advances but merely different variations on the matchmaking idea. To the extent the Court feels it necessary to look beyond the claims, the Patents' specifications both describe the claimed invention similarly, as a process of progressively asking questions and matching the user to other users who gave the same answers. [*See* Doc. 28, Ex. 1 at 1:35-38; Ex. 2 at 6:3-13] The Asserted Claims in essence recite steps of collecting user information, comparing it, and displaying the results. That is exactly the sort of information processing and presentation the Federal Circuit has repeatedly held is not patentable. *See Elec. Power*, 830 F.3d at 1353-54; *Voter Verified*, 887 F.3d at 1385-86. Trinity's Asserted Claims are wholly directed to process of matching people who gave corresponding answers to a question, which can be "performed entirely in the human mind . . . ." *Voter Verified*, 887 F.3d at 1385; *Jedi Techs*, No. 1:16-1055-GMS, at *14-15 ("The asserted [matchmaking]

claims merely recite activities performed by humans, and 'generalized steps to be performed on a computer using conventional computer activity.'").

Computerizing that abstract matchmaking concept does not create patentability, as the Asserted Claims contain no "specific asserted improvement in computer capabilities . . . ." *Enfish*, 822 F.3d at 1335-36; *Jedi Techs*, No. 1:16-1055-GMS, at *14-15 (rejecting patentee's arguments on similar matchmaking patent); *Aatrix*, 890 F.3d at 1359 (stating "in accordance with *Alice*, we have repeatedly recognized the absence of a genuine dispute as to eligibility for the many claims that have been defended as involving an inventive concept based merely on the idea of using existing computers or the Internet to carry out conventional processes, with no alteration of computer functionality," and listing cases). Here, the Patents' claims do not recite a specific improvement to the functioning of a computer; rather, "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Software Rights*, No. 12-cv-03970-HSG, at *12. Moreover, to the extent additional technical details exist in the specifications of the Patents, those cannot be imported into the claims, which cover nothing but the broad abstract idea. *ChargePoint*, 920 F.3d at 769. Even with regard to the dependent claims in the '321 Patent that recite using two servers or in the '685 Patent that recite using remote processing devices, the Federal Circuit has "consistently held . . . that claims are not saved from abstraction merely because they recite components more specific than a generic computer." *BSG Tech LLC v. Buyseasons, Inc*., 899 F.3d 1281, 1286-87 (Fed. Cir. 2018) (listing cases). Thus, recitation of a structure slightly more specific than a generic computer "does not save the asserted claims at step one." *Id*.; *see also FairWarning IP, LLC v. Iatric Sys., Inc.,* 839 F.3d 1089, 1095 (Fed. Cir. 2016) ("although the claims limit the abstract idea to a particular environment—a mobile telephone system—that does not make the claims any less abstract for the step 1 analysis.").

The Supreme Court's stated the concern with § 101 is "preemption," i.e., that the patent gains a monopoly on an idea. *Id.*; *Alice*, 573 U.S. at 216. Here, Trinity has alleged Covalent's Kippo app infringes both Patents not by implementing a specific technological innovation but merely by asking a user if they would like to see dating profiles of a particular gender and then displaying the profiles of other users matching the selection. [Doc. 28 ¶¶ 46-53, 59-67] Trinity's claims are based on alleged performance of the claimed steps on *any* hardware using *any* software. *If the Patents' claims were valid, Trinity could sue every social network and online dating company in existence*. That is further proof that Trinity seeks to monopolize the abstract idea of matching people who gave corresponding answers to a question through implementation on generic, known computer components.[2]

### C.    *Alice* Step 2: Claims Reciting Generic Computer Components Do Not Contain an Inventive Concept

The second step of the *Alice* test requires considering "the elements of each claim individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Bozeman*, 955 F.3d at 980 (quoting *Alice*, 573 U.S. at 318). "To save a patent at step two, *an inventive concept must be evident in the claims*." *RecogniCorp*, 855 F.3d at 1327 (emphasis added) (citing *Alice*'s holding that "[a]t *Mayo* step two, we must examine the elements of the claim to determine whether it contains an 'inventive concept'"). Specifically, "[w]here a claim is directed to an abstract idea, *the claim must include additional features* to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *ChargePoint*,

---

[2] While the method claimed by the Patents does not seem especially innovative, that would not change the analysis. Even if the invention claims an improvement on an abstract idea, it remains unpatentable under § 101, as it is still directed to an abstract idea. *SAP Am*, 898 F.3d at 1168. That remains true though the claims may be "groundbreaking, innovative, or even brilliant," and even if they are "novel and nonobvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103." *Id*. at 1163; *see also Synopsys*, 839 F.3d at 1151 ("[A] claim for a new abstract idea is still an abstract idea.").

920 F.3d at 773 (internal punctuation omitted; emphasis added). "These additional features cannot simply be well-understood, routine, conventional activities previously known to the industry." *Id*. "Instead, the inventive concept must be sufficient to ensure that the patent in practice amounts to significantly more than a patent on the abstract idea." *Id*.

Indeed, at step two the Court must "scrutinize the claim elements more microscopically" and reject as ineligible for patenting claims that fail to recite an inventive concept. *Elec. Power*, 830 F.3d at 1354. References to concepts in the patent specification "do not confer patent eligibility because they are described only in the patent specification; and an *Alice* analysis concerns itself with claim language, not unclaimed features." *PLC v. Iac/Interactivecorp, Match Grp., Inc*., No. 18-366-WCB, at *28 (D. Del. Feb. 4, 2019) (citing cases); *see also Windy City Innovations, LLC v. Facebook, Inc*., 411 F. Supp. 3d 886, 902 (N.D. Cal. 2019) (finding arguments for inventive concept at step two failed because, "though Windy City cites to portions of the specification in search of an inventive concept, Claim 19 itself does not describe . . . nor does it explain [those concepts]").

Because step two focuses on what is claimed, "if the evidence that aspects of the invention [were] not well-understood, routine, and conventional does not pertain to the invention *as claimed*, it will not create a factual dispute as to these claims." *Aatrix*, 890 F.3d at 1357 (emphasis added); *Windy City*, 411 F. Supp. 3d at 902 (listing cases). In addition, "[t]he description of already-available computers that are not themselves plausibly asserted to be an advance amounts to a recitation of what is well-understood, routine, conventional." *Whitserve*, 2019-2240, at *9 (quoting *SAP Am.*, 898 F.3d at 1170). The Federal Circuit therefore has held that "[a] statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory" and does not "prevent resolving the eligibility question as a matter of law.'" *Simio*, 2020-1171, at *19-20 (quoting *Aatrix*, 882 F.3d at 1125); *see also Ubisoft Ent.*, 2019-2399, at *7; *Yanbin Yu*, No. 3:18-cv-

DEFENDANT'S MEMO IN SUPPORT OF
RULE 12(B)(6) MOTION TO DISMISS FAC
CASE NO. 2:21-CV-01360-JWH-MRW

06181-JD, at *4 ("A patentee cannot avoid dismissal of ineligible claims purely on the basis of conclusory or generalized factual allegations . . . about inventiveness"). And the Federal Circuit has "repeatedly held that such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea." *Elec. Power*, 830 F.3d at 1355 (citing cases); *SAP Am.*, 898 F.3d at 1169-70 (same); *Mortg. Grader*, 811 F.3d at 1324-25 (generic computer components such as an "interface," "network," and "database," fail to satisfy the inventive concept requirement).

Here, the Asserted Claims of both Trinity Patents do not recite any inventive concept. They merely describe the abstract process of matching users who gave corresponding answers to a question through the use of off-the-shelf computer technology. Like the computerized matchmaking patent rejected in *Jedi*, "the generic computer system contemplated by the patent could be replaced with a human matchmaker who compares two individuals based on submitted or publicly available information, and then sends both chatters a message which prompts their meeting." *Jedi Techs.*, No. 1:16-1055-GMS, at *15-16. "While the use of a machine might improve the efficiency of the process, this improvement is not the 'significantly more' contemplated by *Alice* that 'ensure[s] that the patent in practice' truly adds to the invention." *Id*. "The use of a generic computer to notify a chatter of matches recites what human matchmakers do in their profession—notify a customer that they have found a compatible individual." *Id*. at *16. There is nothing in the claim language of either Patent that expressly ties the claims to specific, inventive technology. *See Digitech Image Techs., LLC v. Elecs. for Imaging, Inc*., 758 F.3d 1344, 1351 (Fed. Cir. 2014) (finding no inventive concept where "[c]ontrary to [the patentee's] argument, nothing in the claim language expressly ties the method to an image processor" which rendered the patented method "so abstract and sweeping as to cover any and all uses of a device profile.").

*OIP Technologies*, 788 F.3d 1359, is also analogous. There, the Federal

Circuit affirmed dismissal under § 101 for a patent concerned with the "abstract idea of offer-based price optimization." *Id*. at 1364. That patent recited a computerized system for communicating a price offer to a user, receiving the user's preferences, gathering pricing statistics, determining an estimated outcome of a second price offer, selecting a price, and communicating a second price offer to the user. *Id*. at 1361. The Federal Circuit found the claims lacked any inventive concept and "merely recited well-understood, routine conventional activities, either by requiring conventional computer activities or routine data-gathering steps." *Id*. at 1363 (internal punctuation omitted). "Moreover, the claims are exceptionally broad and the computer implementation limitations do little to limit their scope." *Id*.

The same is true here. The Asserted Claims recite nothing more than generic computer technology and structures. And the specifications in both Patents make clear the claimed inventions can be implemented on generic hardware and software using any well-known programming method. [*See* Doc. 28, Ex. 1 at 9:56-59, 11:21-59; Ex. 2 at 5:41-63, 9:37-38, 10:16-33, 11:20-52, 12:33-34, 13:32-55] The Asserted Claims therefore do not even arguably recite an inventive concept necessary to survive a motion to dismiss. *See Aatrix*, 890 F.3d at 1357; *see also SAP Am*., 898 F.3d at 1170 ("Some of the claims require various databases and processors, which are in the physical realm of things. But it is clear, from the claims themselves and the specification, that these limitations require no improved computer resources InvestPic claims to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed process."); *Elec. Power*, 830 F.3d at 1355-56 (holding claims do "not include any requirement for performing the claimed functions of gathering, analyzing, and displaying in real time by use of anything but entirely conventional, generic technology. The claims therefore do not state an arguably inventive concept in the realm of application of the information-based abstract ideas."). Rather, Trinity's Patents both claim the abstract idea of matching people who gave

1  corresponding answers to a question, which is not permitted under Supreme Court

2  and Federal Circuit law.

3      Finally, to the extent Trinity attempts to argue that the swiping limitation in

4  the '685 Patent's Claim 2 saves it, that is not so. "Simply appending conventional

5  steps, specified at a high level of generality, was not 'enough' to supply an

6  inventive concept." *Alice*, 573 U.S. at 216; *OIP Techs.*, 788 F.3d at 1364 ("the

7  addition of steps to test prices and collect data based on customer reactions does not

8  add any meaningful limitations to the abstract idea"). The '685 Patent specification

9  contains no references whatsoever to swiping, and neither the specification nor the

10  claims describe how the swiping limitation should be implemented or performed.

11  The '685 Patent does not purport to have invented swiping or to have improved the

12  process. Thus, because the "swiping" limitation is a conventional step stated at a

13  high level of generality appended to the abstract idea, and it was a known

14  technological process, that limitation cannot be found to state an "inventive

15  concept" under step two. *See id.*; *see also Ringcentral, Inc. v. Dialpad, Inc.*, 372 F.

16  Supp. 3d 988, 1000 (N.D. Cal. 2019) ("RingCentral does not contend that it

17  invented the E-911 system or the methods of registering for that system, and it

18  points to no language in the claim or specification indicating that its claimed

19  method in any way 'improved [this] existing technological process.'"). Therefore,

20  the '685 Patent, like the '321 Patent, broadly claims an abstract idea and should be

21  found ineligible for patenting under § 101.

22      **D.    Other Asserted Claims Need Not Be Analyzed Separately But Are Invalid for the Same Reasons**

23

24      While the above analysis focuses on Claim 1 of the '321 Patent and Claim 2

25  of the '685 Patent, the other Asserted Claims fall together for the same reasons. It is

26  well established that "a district court need not expressly address each asserted claim

27  where the court concludes particular claims are representative because all the

28  claims are substantially similar and linked to the same abstract idea." *Papst*

*Licensing*, 193 F. Supp. 3d at 1085 (quoting *Content Extraction*, 776 F.3d at 1348 (rejecting plaintiff's argument that the court had to individually address every one of its claims)); *see also Mortg. Grader*, 811 F.3d at 1324 n.6 (court did not err by discussing only one claim where claims did not "differ in any manner that is material to the patent-eligibility inquiry"); *Voter Verified*, 887 F.3d at 1385 ("While these claims encompass both methods and systems, we find there to be no distinction between them for § 101 purposes, as they simply recite the same concept.").

The invalidity analysis for the Patents applies equally to the other Asserted Claims, which merely recite the same process and other variations of ways to match users by their answers to questions. As the Northern District of California court held recently in a similar situation, the dependent claims "add additional details and specificity to the [independent claims] [but] the details they add are also abstract concepts related to the manipulation and processing of information." *Synopsys*, No. 20-cv-04151-WHO, at *5. Dependent claims "which merely add abstract steps to the abstract concepts at the core of [the independent claims], are also directed to abstract concepts." *Id*.

Every Asserted Claim is directed towards matching users who gave corresponding answers to a question, and no claim requires any specific, non-generic hardware or software to perform these steps or any other part of the claimed abstract mental process. The dependent claims simply add additional abstract concepts—such as asking multiple questions, determining a match by a percentage of corresponding answers, performing the abstract process on multiple generic computer servers, matching users by gender, or performing the process using known distributed computing techniques. Like the claims in *Voter Verified*, the claims here "only recite different variations of the same abstract idea being performed with other generic computer components." 887 F.3d at 1386; *see also Alice*, 573 U.S. at 311 (explaining that "the system claims are no different from the

1   method claims in substance. The method claims recite the abstract idea

2   implemented on a generic computer; the system claims recite a handful of generic

3   computer components configured to implement the same idea."). Therefore, the

4   Court should find that, like the specifically discussed claims, all Asserted Claims of

5   the '321 Patent are invalid for claiming the same concept of matching people who

6   gave corresponding answers to a question. *See Voter Verified*, 887 F.3d at 1385;

7   *Synopsys*, No. 20-cv-04151-WHO, at *5.

8   <u>**Conclusion**</u>

9        For the reasons stated above, Covalent respectfully requests that the Court

10   dismiss Trinity's Complaint in its entirety with prejudice. The Asserted Claims of

11   the '321 and '685  Patents are invalid for claiming an unpatentable abstract idea,

12   and that defect cannot be remedied by amendment, particularly where Trinity has

13   already amended its complaint once.

14

15     DATED:  May 12, 2021               Respectfully submitted,

16   THE MCARTHUR LAW FIRM, PC

17   By: */s/ Stephen McArthur*
18   Stephen McArthur
    Thomas Dietrich

19   *Attorneys for Defendant*
20   *Covalent, Inc.*

21

22

23

24

25

26

27

28