Stephen McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, P.C.
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorneys for Defendant*
*Covalent, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINITY INFO MEDIA, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COVALENT, INC.,<br><br>　　　　　Defendant. | Case No. 2:21-CV-01360-JWH-MRW<br><br>**DEFENDANT COVALENT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Judge: Hon. John W. Holcomb<br>**Hearing Date**: June 11, 2021<br>**Time**: 9:00 a.m.<br>**Courtroom**: 2 |

## TABLE OF CONTENTS

A.  New Federal Circuit Opinions Support Dismissal .......................................................... 2

B.  Dismissal Should Be Granted Without Claim Construction ......................................... 3

C.  Trinity Cannot Save Its Broad, Abstract Claims By Importing Unclaimed Language From The Specifications ................................................................. 4

D.  Trinity's Patent Claims are Directed to Matchmaking .................................................. 6

    1.  Claiming computers does not create patent eligibility ........................................... 6

    2.  Mobile phone is merely an environment for abstract process .............................. 7

    3.  Computerizing a human process does not create eligibility ................................. 8

E.  Trinity Cannot Identify An Inventive Concept in the Claims ...................................... 9

F.  Swiping Limitation Cannot Save the '685 Patent ......................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354 (Fed. Cir. 2018) ............... 10

*Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) .................. 4

*Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ................................................................... 10

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ............................................ 7

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) ................................................. 8

*ChargePoint, Inc. v. SemaConnect*, Inc., 920 F.3d 759 (Fed. Cir. 2019) .................................. 4, 6

*Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359 (Fed. Cir. 2020) .................... 6, 8

*Dropbox, Inc. v. Synchronoss Techs.*, No. 2019-1765 (Fed. Cir. June 19, 2020) ............ 2, 3, 11, 12

*Elec. Comm. Techs. v. ShoppersChoice.com, LLC*, 958 F.3d 1178 (Fed. Cir. 2020) ...................... 6

*Ericsson Inc. v. TCL Commc'n Tech. Holdings*, 955 F.3d 1317 (Fed. Cir. 2020) ..................... 5, 10

*Free Stream Media Corp. v. Alphonso Inc.*, No. 2019-1506 (Fed. Cir. May 11, 2021). ........ 2, 6, 11

*Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369 (Fed. Cir. 2016) ............................................. 4

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015) ............. 9

*Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315 (Fed. Cir. 2017) ........................... 7

*Jedi Techs., Inc. v. Spark Networks, Inc.*, Civil Action No. 1:16-1055-GMS (D. Del. Aug. 3, 2017) ................................................................................................................................. 2, 3

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) ................................... 8, 12

*Poweroasis v. T-Mobile*, 522 F.3d 1299 n.3 (Fed. Cir. 2008) ....................................................... 12

*RecogniCorp LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017) ............................................. 9

*SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) .............................................. 7, 9

*Simio, LLC v. Flexsim Software Prods., Inc.*, No. 2020-1171 (Fed. Cir. Dec. 29, 2020) ............ 3, 4

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138 (Fed. Cir. 2016) ................................... 4

*Tenaha Licensing LLC v. Ascom (US) Inc.*, No.19-568-LPS-SRP n.6 (D. Del. Jan. 2, 2020) ........ 3

*TLI Comms. LLC v. AV Auto., L.L.C.*, 823 F.3d 607 (Fed. Cir. 2016) .................................... 8, 11

*Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376 (Fed. Cir. 2018) .............. 6, 8

*Whitserve LLC v. Donuts Inc.*, 2019-2240 (Fed. Cir. Apr. 10, 2020) .......................................... 10

Plaintiff Trinity seeks to bamboozle the Court with technological-sounding terms it pretends are found in the Asserted Claims. They are not there. None of the Asserted Claims recite real-time analysis of matches, synchronization of servers, using hash functions as unique identifications, or an "in-memory, two-dimensional array [that] provides for linear speed across multiple match servers and an immediate comparison" of matches. [Doc. 32 at 14] These are all elements that Trinity has made up or improperly imported from the Patent specifications. Indeed, the claimed matchmaking process can be performed using one of the "antiquated processors" Trinity decries in its brief—but no matter, *the **claims** of the patents-in-suit do not require any specific hardware, software, or programming*. They are directed to the steps of a matchmaking process.

Trinity's infringement allegations show the Asserted Claims' overbreadth. Trinity has not alleged Covalent's Kippo dating app infringes by using a new technological process that improves the functionality of computers. No, Trinity alleges that Kippo infringes by asking a user their gender and the gender of people the user would like to connect with, matching the user with other users who gave corresponding answers, and displaying profiles of potential matches. [Doc. 28 ¶¶ 46-53; 59-67] In other words, the entire *claimed* process is matching people who gave corresponding answers to a question. That is an abstract idea that common sense tells us humans have performed for eons. As one example, the 1960s' TV show *The Dating Game* used "progressive polling" (multiple questions) to match users (contestants) based on corresponding answers. *See, e.g.*, Youtube.com, "Steve Martin - Dating Game 1968" (https://www.youtube.com/watch?v=9ITkTe5gutM) (last visited May 25, 2021). The dependent claims merely cover other permutations of this abstract idea, like matching by gender or by asking two questions instead of one. A prior case invalidating similar matchmaking patents on a motion to dismiss offers this Court a template to follow. *See Jedi Techs., Inc. v. Spark Networks, Inc.*, No. CV 1:16-1055-GMS, 2017 WL 3315279 (D. Del. Aug. 3, 2017). And a long

line of Federal Circuit law supports granting Covalent's motion to dismiss.

**A. New Federal Circuit Opinions Support Dismissal**

Contrary to Trinity's assertions, invalidating patent claims under § 101 at the motion to dismiss stage is alive and well in the Federal Circuit. Just weeks ago, the Federal Circuit reversed a district court's denial of a motion to dismiss on § 101 grounds, finding invalid claims directed to targeting a television audience across multiple screens, which recited use of "(1) a networked device (e.g., a smart TV); (2) a client device (e.g., a mobile device); and (3) a relevancy matching server." *Free Stream Media Corp. v. Alphonso Inc.*, No. 2019-1506, at *3 (Fed. Cir. May 11, 2021). Those claims included far more technological structure than Trinity's claims. *See id*. at *4-5. Still, the Federal Circuit found "nothing in [the claims] demonstrates an improvement to computer functionality," and there was no inventive concept because the claims' inclusion of technology such as mobile devices and networked servers "simply recite the use of generic features, as well as routine functions, to implement the underlying idea." *Id*. at *14-19; *see also Dropbox, Inc. v. Synchronoss Techs*., No. 2019-1765, at *5-16 (Fed. Cir. June 19, 2020) (affirming grant of motion to dismiss network security and file synchronization patents under § 101, including claims reciting "a file upload connection server," "interactive connection server," and "synchronizer").

The *Dropbox* opinion also supports Covalent's position that the Court should disregard Trinity's conclusory statements about purported advances made by its Patents. *See id*. at *17 (finding "Dropbox's complaint asserts only conclusory allegations insufficient to survive a motion to dismiss."). The Federal Circuit noted there that "any allegation about inventiveness, wholly divorced from the claims or the specification does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Id*. (quoting *Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1317 (Fed. Cir. 2019)). Like Trinity's First Amended Complaint ("FAC"), Dropbox's "allegations claim

that each of the patents solves given technological problems, but never provide more support than a conclusory statement that 'the inventions described and claimed solved these problems,' improved the art, 'represented a significant advance over existing approaches, and were not well-known, routine, or conventional in the field' at the time of patenting." *Dropbox*, No. 2019-1765, at *17. The Federal Circuit held "[t]hese pleadings provide no more than a series of legal conclusions about the § 101 analysis" and the district court was "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. Here, Trinity has not offered any "plausible and specific allegations" about aspects of *the claims* that are inventive.

### B. Dismissal Should Be Granted Without Claim Construction

The Federal Circuit recently rejected an argument identical to Trinity's that claim construction was necessary before deciding § 101 eligibility. The court found "[t]he main problem with this argument is that [plaintiff] has not explained how it might benefit from any particular term's construction under an *Alice* § 101 analysis." *Simio, LLC v. Flexsim Software Prods., Inc*., No. 2020-1171, at *19-20 (Fed. Cir. Dec. 29, 2020). Rather, like Trinity, the plaintiff there "limits its specific claim-construction arguments to showing that claim 1 is to a statutorily eligible 'machine'" and there was "no error in the district court's determining ineligibility without first conducting claim construction." *Id*.; *see also Tenaha Licensing LLC v. Ascom (US) Inc*., No.19-568-LPS-SRP, at *19 n.6 (D. Del. Jan. 2, 2020) (claim construction unnecessary before granting motion to dismiss under § 101 and noting that "in similar situations where a party failed to explain how claim construction could impact the Section 101 analysis, courts have proceeded without claim construction" (listing cases)); *Jedi Techs.*, No. CV 1:16-1055-GMS, at *6 (same).

Here, Trinity has not identified any terms for which claim construction might impact the § 101 analysis or explained such impact. Rather, Trinity's argument is broadly that its claims cover patent-eligible technology, which is not a reason to

require claim construction. *Simio*, No. 2020-1171, at *19-20; *see also Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) ("evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction."). Waiting for claim construction is unnecessary and would merely to waste the parties' and Court's time and resources.

### C. Trinity Cannot Save Its Broad, Abstract Claims By Importing Unclaimed Language From The Specifications

Trinity admits that "it is the claims that define the invention, not the specification." [Doc. 32 at 22 n.10 (citing *Markman v. Westview Inst., Inc.*, 52 F.3d 967, 979-81 (Fed. Cir. 1995)] But Trinity's arguments rely on importing details from the Patents' specifications into the claims. That is contrary to Federal Circuit law, and accepting Trinity's arguments would be clear error. *See ChargePoint, Inc. v. SemaConnect*, Inc., 920 F.3d 759, 769 (Fed. Cir. 2019) *ChargePoint* explained:

> The breadth of the claim language here illustrates why any reliance on the specification in the § 101 analysis must always yield to the claim language. Ultimately, "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves," and the specification cannot be used to import details from the specification if those details are not claimed. ***Even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea.***

*Id*. at 766-69 (emphasis added, citation omitted); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("we have held that complex details from the specification cannot save a claim directed to an abstract idea that recites generic computer parts"); *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("[T]he complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method.").

In Trinity's telling, "claim 1 recites steps in a non-traditional system to rapidly connect multiple users using progressive polling that compare answers in real time based on their unique identification (ID)." [Doc. 32 at 21] But a look at

Claim 1 shows Trinity's deception. Claim 1 does not recite that a match comparison must occur in "real-time" or give "nearly instant results." [*See* Doc. 28, Ex. 1 at 12:15-34] There is nothing requiring "progressive polling" either; the claim only recites "providing the user a first polling question" and conducting a comparison based on that one question. [*Id*. at 12:23-31] There is no requirement for how to create a "unique identification" for a question, whether as a "hash function" as Trinity argues in its brief or any other fashion. [*Id*. at 12:24-25] Indeed the "unique identification" for a question is not defined in the specification; it could merely consist of naming a first question "Question 1" and so on. [*Id*. at 6:23-24]

The technology described in the Patents' specifications is expressly non-limiting, and the claimed matchmaking process was intended to be operated on any combination of generic, general-purpose hardware and software. [*See* Doc. 28, Ex. 1 at 9:56-59, 11:21-59; Ex. 2 at 5:41-63, 9:37-10:33, 11:20-52, 12:33-34, 13:32-55] Trinity's analysis and claim chart in its opposition blatantly attempt to import details from the specifications into the claims in violation of Federal Circuit precedent. The language cited by Trinity simply does not appear in the claims, and the Court should therefore disregard Trinity's analysis on both steps of the *Alice* test. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings*, 955 F.3d 1317, 1330 (Fed. Cir. 2020) ("Because the architecture identified by Ericsson as inventive does not appear in claims 1 or 5 of the '510 patent, we conclude at step two that claims 1 and 5 do not provide a sufficient inventive concept to render them patent eligible.").

The Asserted Claims are dramatically overbroad—as shown by Trinity's allegations that the Kippo app infringes by performing a basic gender-based matching process. Trinity's Patents preempt any process of using a computer to match users based on their answers to a question.[1] That cannot be deemed patent

---

[1] Indeed, Trinity recently sued three other dating app companies in this District for infringing one or both Patents based on offering apps that match users by gender or age. *See Trinity Info Media, LLC v. Hornet Networks, Inc.*, No. 2:21-cv-1351-JAK (Doc. 22 is First Amended Complaint asserting both Patents based on dating app that matches users by age preference, see ¶¶ 47-65); *Trinity Info Media, LLC v.*

DEFENDANT'S REPLY IN SUPPORT OF
RULE 12(B)(6) MOTION TO DISMISS FAC
CASE NO. 2:21-CV-01360-JWH-MRW

eligible under *Alice*. *See ChargePoint*, 920 F.3d at 769 ("preemption may signal patent ineligible subject matter" at both steps of *Alice* test).

### D. Trinity's Patent Claims are Directed to Matchmaking

The Federal Circuit recently noted that "[n]ot infrequently, patentees . . . latch on to this language from *Alice* and claim that their claims do 'improve the functioning of the computer itself.'" *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362 (Fed. Cir. 2020). That is exactly what Trinity is doing here. But the Asserted Claims' generic components do not impart patentability.

#### 1. Claiming computers does not create patent eligibility

Trinity argues that Covalent has improperly stripped away claim limitations to create the impression Claim 1 of the '321 Patent is abstract. But Covalent has simply eliminated the standard computer components recited in Claim 1 to show the focus of the claim—a computer-automated matchmaking process. The Federal Circuit has found invalid under § 101 many claims reciting computer componentry such as "processors" and "computer program code." *See Free Stream*, No. 2019-1506, at *14-19; *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1386 (Fed. Cir. 2018) ("The case law has consistently held that these standard components are not sufficient to transform abstract claims into patent-eligible subject matter," listing cases); *Elec. Comm. Techs. v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182-83 (Fed. Cir. 2020) (affirming invalidity of claims reciting transceivers, processors, memories, and computer program code); *Customedia*, 951 F.3d 1359, 1364-65 (affirming invalidity of claims reciting a "data delivery system" that included a "remote account transaction server" and a "programmable local receiver unit"); *SAP Am., Inc. v. Investpic, LLC*, 898 F.3d

---

*Raya App, Inc.*, No. 2:21-cv-1361-GW-JEM (Doc. 1 is Complaint asserting '321 Patent based on dating app matching users by preferred gender, see ¶¶ 33-39); *Trinity Info Media, LLC v. The League App, Inc.*, No. 2:21-cv-1362-JAK-MRW (Doc. 1 is Complaint asserting '321 Patent based on dating app matching users by preferred gender, see ¶¶ 33-41). Covalent requests that the Court take judicial notice of these filings. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (allowing judicial notice of filings in related cases).

1161, 1167-68 (Fed. Cir. 2018) (affirming dismissal of claims reciting system including a "client database" and "a plurality of processors collectively arranged to perform a parallel processing computation"). Trinity's Patent claims are therefore not saved by reciting componentry such as "processors," "memory," and "servers." That is exactly the sort of language that is insufficient to transform the Patents' abstract claims into patent-eligible subject matter.

Moreover, to the extent a dependent claim recites some more specific componentry, such as Claim 8 of the '321 Patent's limitation concerning plural match servers, the Federal Circuit has "consistently held . . . that claims are not saved from abstraction merely because they recite components more specific than a generic computer." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286-87 (Fed. Cir. 2018) (listing cases and holding that the "recited database structure similarly provides a generic environment in which the claimed method is performed."); *see also SAP Am.*, 898 F.3d at 1167-68 (process performed on "plurality of processors" performing "parallel processing computation"). The servers and processors claimed in Trinity's Patents merely provide the environment in which the abstract matchmaking process is performed. The focus of the Asserted Claims is that process, not any physical improvement of computer functionality.

### 2. Mobile phone is merely an environment for abstract process

Trinity's argument that the claimed process is patentable because it can be performed on a mobile device fares no better. In *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315 (Fed. Cir. 2017), the court affirmed the invalidity of claims that recited steps performed on a network server and a mobile device. *Id*. at 1330. That court noted "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Id*. And "the mobile interface here does little more than provide a generic technological environment to allow users to access information." *Id*.; *see also*; *TLI Comms. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("Lastly,

although the claims limit the abstract idea to a particular environment—a mobile telephone system—that does not make the claims any less abstract for the step 1 analysis."); *Cellspin*, 927 F.3d at 1317 (finding invalid claims reciting steps performed on a mobile device). A mobile device is nothing more than a small computer. Patentability cannot created merely by performing claim steps on a small device rather than a large one. Trinity's assertion that its Patents are not abstract because steps can be performed on a mobile device should be rejected.

### 3. Computerizing a human process does not create eligibility

Trinity's last-ditch effort to avoid an abstractness finding on step one is to argue that the claimed matchmaking process cannot be performed by humans because it recites computers. [Doc. 32 at 17 (arguing claims are patent-eligible because it "involves nanosecond comparisons" and a "human cannot mentally perform polling operations that use selection criteria involving servers, storage, identifiers and/or thresholds.")] However, the Federal Circuit has repeatedly rejected the same argument, holding that "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359, 1363 (Fed. Cir. 2015); *Customedia*, 951 F.3d at 1364 (listing cases holding the same); *Voter Verified*, 887 F.3d at 1386 (holding claims for human cognitive actions automated using general purpose computer components were directed to abstract idea). That Trinity's claimed process might perform the steps faster than a human is irrelevant, for "it is not enough . . . to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool." *Customedia*, 951 F.3d at 1364.

Instead, the Federal Circuit has held that, regardless of recited computer componentry, "claims focused on 'collecting information, analyzing it, and displaying certain results of the collection and analysis' are directed to an abstract idea." *SAP Am.*, 898 F.3d at 1167. That is exactly what Trinity's Patents claim—collecting a user's answers, comparing them with answers of others, and displaying

potential matches. The Asserted Claims are not "directed to the creation of something physical," such as a claimed improvement "to how the physical display operated (to produce better quality images) . . . ." *Id*. (citing *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016). Rather, the Asserted Claims focus on the abstract idea of matchmaking based on question answers. And they preempt the entire field, as shown by the breadth of the claim language and Trinity's infringement allegations against Covalent. The Asserted Claims are thus directed towards an abstract idea under step one of the *Alice* test.

### E. Trinity Cannot Identify An Inventive Concept in the Claims

On *Alice*'s step two, Trinity argues its Asserted Claims contain inventive concepts in the following: "(1) a progressive poll that matches a user with other users in real time; (2) the use of multiple processors, match servers, unique identifications and/or a match aggregator; (3) carrying out one or more matching operations on a handheld device; or (4) a computer product in the form of a matching app . . . ." [Doc. 32 at 20] But again Trinity ignores the claim language and Federal Circuit law.

As explained, none of the Asserted Claims recite conducting the matching process in real-time. That simply does not exist in the claims and thus cannot constitute an "inventive concept." *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (rejecting patentee's argument that an inventive concept was supplied by "the claimed invention in 'real time' customiz[ing] the web page" because "[t]he claims are not so limited."); *see also RecogniCorp LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident in the claims."). Even if the claims did contain a real-time limitation, that would not be an inventive concept because using computers to make processes faster is well-known. *See Intellectual Ventures*, 792 F.3d at 1367 ("Nor, in addressing the second step of Alice, does claiming the improved speed or efficiency inherent with applying the abstract idea

on a computer provide a sufficient inventive concept."); *Whitserve LLC v. Donuts Inc.*, 2019-2240, at *9 (Fed. Cir. Apr. 10, 2020) ("The description of already-available computers that are not themselves plausibly asserted to be an advance . . . amounts to a recitation of what is well-understood, routine, and conventional.").

Trinity's second point about "the use of multiple processors" seeks to base an inventive concept in the idea of running the process on two computers, instead of one. The Federal Circuit in *SAP America* found claims reciting steps performed on a "plurality of processors" operating in parallel were invalid under § 101 and noted "this court has ruled many times that such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea." 898 F.3d at 1170. If merely dividing a process onto multiple processors could be deemed an inventive concept, it would turn patent eligibility into a draftsman's art "thereby eviscerating the rule that laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 2016 (2014).

Trinity's third argument that running the process on a mobile device is an inventive concept fares no better. The '321 Patent does not recite any claims that are limited to a mobile device, so that cannot constitute an inventive concept for that Patent. *See Ericsson*, 955 F.3d at 1330 (where the concept was not present in the claims, they "do not provide a sufficient inventive concept to render them patent eligible"). Moreover, the '685 Patent specification states that mobile apps were well-known in the prior art. [Doc. 28, Ex. 2 at 1:46-60] The concept of operating software on a mobile phone thus cannot possibly be deemed inventive, as the specification admits. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1358 (Fed. Cir. 2018) ("a court need not accept as true allegations that contradict . . . the claims and the patent specification."). Further, the Federal Circuit has held a mobile device on which claim steps are performed "simply provides the environment in which the abstract idea . . . is carried out." *TLI Comms.*, 823 F.3d at

614. Thus, claims involving a mobile device and a server "fall squarely within our precedent finding generic computer components insufficient to add an inventive concept to an otherwise abstract idea." *Id.*; *see also Free Stream.*, No. 2019-1506, at *18 (claims for security processes on mobile devices "simply recite the use of generic features, as well as routine functions, to implement the underlying idea.").

The same logic and law applies to Trinity's argument that its claims are inventive because they can be performed on an "app." The '685 Patent specification states "mobile apps" were well-known in the prior art. [Doc. 28, Ex. 2 at 1:27-55] Further, the term "app" is defined as an "abbreviation for application: a computer program that is designed for a particular purpose"). *See* Cambridge English Dictionary, "app," https://dictionary.cambridge.org/us/dictionary/english/app (last visited May 25, 2021). Thus, based on the specification of both Patents—and the obvious fact that computer programs predated the Patents—Trinity cannot plausibly allege that the use of an app was an inventive concept. There is simply no inventive concept contained in any of the Asserted Claims under step two of the *Alice* test.

### F. Swiping Limitation Cannot Save the '685 Patent

Finally, Trinity's argument that the "swiping" limitation saves the '685 Patent is unsupportable for two reasons. *First*, Trinity's only relevant allegation in the FAC about swiping is: "The present invention also includes an advance over the prior art and an improvement over a general-purpose computer by enabling a user to review the matches with other users through the act of swiping." [Doc. 28 ¶ 30] But the '685 Patent specification does not contain a word about swiping or gesture-based actions on a mobile phone. Trinity's statement in the FAC is thus the sort "allegation about inventiveness, wholly divorced from the claims or the specification" that cannot defeat a motion to dismiss. *Dropbox*, No. 2019-1765, at *17. That conclusory statement is not a "plausible and specific factual allegation" that swiping is inventive, and thus the Court is not bound to accept it as true. *See id*.

*Second*, Trinity wrongly assumes a 2010 priority date for the swiping

limitations. The '685 Patent's application was filed July 2, 2018, as a continuation-in-part ("CIP") from the '321 Patent's application. [Dkt. 28, Ex. 2 at 1] A CIP contains "a portion or all of the disclosure of an earlier application together with added matter not present in that earlier application." *Poweroasis v. T-Mobile*, 522 F.3d 1299, 1304 n.3 (Fed. Cir. 2008). "It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application . . . ." *Id*. at 1306. "When neither the PTO nor the Board has previously considered priority, *there is simply no reason to presume that claims in a CIP application are entitled to the effective filing date of an earlier filed application*." *Id*. at 1305 (emphasis added). Trinity assumes that 2010, rather than July 2018, is the priority date of the swiping limitation. That assumption is unfounded and not supported by plausible, specific allegations or evidence from Trinity. By July 2018, swiping in dating apps was well-known. [*See* Declaration of Thomas Dietrich filed herewith, Ex. A][2]

Swiping between matches is merely a way for users to sort data. Trinity has not plausibly alleged that appending swiping to the abstract matchmaking steps improves the functioning of the computer itself. Nor can swiping supply an inventive concept, as it is a conventional step specified at a high level of generality appended to the process. *See OIP Techs*., 788 F.3d at 1364. And Trinity has not offered a "plausible and specific factual allegation" that its swiping limitation is inventive. *Dropbox*, No. 2019-1765, at *17. The Court should thus find the '685 Patent's Asserted Claims are invalid for the same reason as the '321 Patent. Trinity cannot own the human process of matching people by their answers to a question.

---

[2] Covalent offers this exhibit in response to Trinity's arguments in its opposition that the swiping limitation in the '685 Patent is an inventive concept. [*See* Doc. 32 at 1, 3, 7, 15, 20]. Covalent requests that the Court take judicial notice of the fact that these articles and filing were publicly available before the July 2018 priority date. *See Heliotrope Gen., Inc. v. Ford Motor Co*., 189 F.3d 971, 981 (9th Cir. 1999); *In re Am. Funds Sec. Lit.,* 556 F. Supp. 2d 1100, 1105 (C.D. Cal. 2008).

DATED: May 27, 2021

Respectfully submitted,

THE MCARTHUR LAW FIRM, PC

By: */s/ Thomas Dietrich*
    Stephen McArthur
    Thomas Dietrich

*Attorneys for Defendant Covalent, Inc.*

# **CERTIFICATE OF SERVICE**

Case Name: *Trinity Info Media, LLC v. Covalent, Inc.*
Case No.: 2:21-cv-01360-JWH-MRW

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 9465 Wilshire Blvd., Ste. 300, Beverly Hills, CA 90212. I am not a party to the above-entitled action.

    I have caused service of the following documents, described as:

**DEFENDANT COVALENT, INC.'S REPLY IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

on the following parties by electronically filing the foregoing on May 27, 2021, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Ashley D. Posner                        *Attorneys for Defendant*
Posner Law Corporation
15303 Ventura Boulevard, Suite 900
Sherman Oaks, California 91403
Tel. (310) 475-8520
ashleyposner@gmail.com

Gregory L. Hillyer
Hillyer Legal, PLLC
5335 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Tel. (202) 686-2884
ghillyer@hillyerlegal.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 5/27/2021           By: */s/ Thomas Dietrich*
                                           Thomas Dietrich